UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| BANK OF AMERICA,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>WESTTROP ASSOCIATION, *et al.*,<br><br>　　　　　　　　　　　Defendant. | Case No. 2:16-cv-1451-KJD-DJA<br><br>**<u>ORDER</u>** |

Before the Court is plaintiff Bank of America's Motion for Partial Summary Judgment (ECF No. 62) to which defendant T-Shack, Inc. responded (ECF No. 65), and Bank of America replied (ECF No. 66).

In this nonjudicial foreclosure case, Bank of America seeks a declaration that its deed of trust survived WestTrop Association's trustee's sale. T-Shack, Inc. was the winning bidder at the sale and claims that it holds the superior interest in the property because the foreclosure extinguished all other liens. Bank of America sued T-Shack to quiet title and now moves for summary judgment on those claims. The bank contends that the association's foreclosure did not extinguish its deed of trust because the bank was merely the servicer for Freddie Mac, who actually owned the property interest. As a result, the so-called federal foreclosure bar insulated Freddie Mac's interest against a nonconsensual foreclosure. Alternatively, the bank argues that it satisfied the superpriority portion of the association's lien by tendering a check for nine months of delinquent assessments before foreclosure. Bank of America is correct on both counts. Therefore, WestTrop's foreclosure did not extinguish the existing deed of trust, and T-Shack took its interest in the property subject to the bank's valid interest. Bank of America's motion is granted.

**I. Background**

**A. The Housing and Economic Recovery Act and Federal Foreclosure Bar**

Congress passed the Housing and Economic Recovery Act ("HERA") in response to the 2008 recession and its ensuing foreclosure crisis. The purpose of the act was to protect the fragile housing market by addressing the critical undercapitalization of the Federal Home Loan Mortgage Corporation (Freddie Mac) and Federal National Mortgage Association (Fannie Mae). It sought to ensure that the two companies "operated in a safe and sound manner . . . consistent with the public interest." 12 U.S.C. § 4513(a)(1)(B). To that end, the act subjected both Fannie Mae and Freddie Mac to increased oversight and government control.

The act created the Federal Housing Finance Agency ("FHFA") and authorized it to place both Fannie Mae and Freddie Mac under the Agency's conservatorship, which it did in 2008. As conservator, the FHFA was responsible for supervising and winding up Fannie's and Freddie's affairs. 12 U.S.C. § 4617(a)(2). As conservatees, Freddie Mac and Fannie Mae assets received certain federal protection, including protection from non-consensual foreclosure. This has come to be known as the "Federal Foreclosure Bar." See id. § 4617(j)(3) ("No property of the Agency shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the Agency, nor shall any involuntary lien attach to the property of the Agency").

**B. The Foreclosure of 5155 W. Tropicana Avenue, Unit 2050**

In April of 2007, nonparties Lauren and Andrew Martin purchased a condo located at 5155 W. Tropicana Avenue, unit 2050, in Las Vegas, Nevada. The deed of trust was recorded shortly thereafter. Deed of Trust, ECF No. 62-C. According to that deed, the purchase price was $176,800. Both Lauren and Andrew Martin were listed as borrowers, and Countrywide Home Loans was designated the lender. Id. Mortgage Electronic Registration Services (MERS)[1] was listed as beneficiary. Id. According to Bank of America and Freddie Mac's internal records, Freddie Mac purchased the loan from Countrywide that same month. Meyer Decl. 4, ECF No.

---

[1] MERS is an electronic registry system that tracks the beneficial ownership and servicing rights within property-holding portfolios. See About MERSCORP Holdings, Inc., https://www.mersinc.org/about (last visited Mar. 5, 2020). While MERS is the recorded mortgagee of a property it may assign the loan to other servicers without having to re-record the deed each time. In essence, MERS remains the mortgagee giving the loan owners the flexibility to change the servicers in their loan portfolios quickly and efficiently. Id.

- 2 -

62-A. However, there is no public record proving Freddie Mac's interest in the property. MERS assigned and tracked the servicing rights to the property over the next several years. In December of 2011, Countrywide assigned its interest in the deed of trust to the current plaintiff, Bank of America. Assignment of DOT 2, ECF No. 62-D. Freddie Mac's records show that it never relinquished ownership of the deed of trust despite the property transferring to different loan servicers.

The Martins' condo was part of the WestTrop Association and was subject to the association's Covenants, Conditions, and Restrictions ("CC&Rs"). Part of the CC&Rs required the Martins to pay periodic assessments for general maintenance and common community upkeep. At some point, the Martins fell behind on those assessments, which prompted WestTrop to initiate foreclosure proceedings against them. WestTrop retained Nevada Association Services to pursue foreclosure. Acting as WestTrop's agent, Nevada Association Services recorded a Notice of Delinquent Assessment Lien against the property. Assessment Lien, ECF No. 62-F. In that notice, Nevada Association Services informed the Martins that WestTrop had placed a lien on their property for unpaid assessments. Id. The total amount due to release the lien was $2,207.30, of which $878.81 was late fees, collection costs, and interest. Id. The Martins did not satisfy the lien, causing Nevada Association Services to record a Notice of Default and Election to Sell in August of 2012. Not. of Def., ECF No. 62-G. That notice demanded $3,137.26 in past-due assessments and fees. It also warned the Martins that they risked losing their home if they failed to pay the outstanding balance. Id.

Despite the warnings, the Martins did not pay the balance that Nevada Association Services claimed was due. Meanwhile, Bank of America retained the law firm Miles, Bauer, Bergstrom, and Winters to ascertain and pay the superpriority portion of WestTrop's outstanding lien. Miles Bauer Aff. 2–3, ECF No. 62-K. Miles Bauer contacted Nevada Association Services in September of 2012 to request an account statement for this property. Miles Bauer Letter, ECF No. 62-K-1. The firm's plan was to ascertain the total superpriority balance from the account statement and then pay that balance to halt the foreclosure. Miles Bauer Aff. at 2–3. Nevada Association services refused to provide the account statement, however, citing the Fair Debt

Collection Practices Act. See Miles Bauer Letter 2, ECF No. 62-K-3. Without the statement, Miles Bauer was forced to calculate the superpriority lien balance from a ledger on a different property in the WestTrop association. P.'s Mot. Sum. J. 8, ECF No. 62. Using that statement, Miles Bauer calculated the outstanding superpriority lien amount to be $1,525.50 and mailed a check to Nevada Association Services for that amount. Miles Bauer Letter 2, ECF No. 62-K-3.

WestTrop was undeterred. Despite receiving Miles Bauer's check before the foreclosure, the association rejected the payment and proceeded to foreclosure. In November of 2013, WestTrop sold the property at a public auction to T-Shack, Inc. Foreclosure Deed, ECF No. 62-I. T-Shack paid $9,500 for the property. It recorded the foreclosure deed November 12, 2013. Id. T-Shack believes that WestTrop's foreclosure extinguished all existing liens on the property, including Bank of America's. The bank, on the other hand, claims that its tender and the federal foreclosure bar preserved its interest from the association's foreclosure. This lawsuit followed.

## II. Legal Standard

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986). It is available only where the absence of material fact allows the Court to rule as a matter of law. Fed. R. Civ. P. 56(a); Celotex, 477 U.S. at 322. Rule 56 outlines a burden shifting approach to summary judgment. First, the moving party must demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to produce specific evidence of a genuine factual dispute for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A genuine issue of fact exists where the evidence could allow "a reasonable jury [to] return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court views the evidence and draws all available inferences in the light most favorable to the nonmoving party. Kaiser Cement Corp. v. Fischbach & Moore, Inc., 793 F.2d 1100, 1103 (9th Cir. 1986). Yet, to survive summary judgment, the nonmoving party must show more than "some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.

### III. Analysis

Bank of America brought six causes of action against three different defendants: the foreclosure buyer, T-Shack, Inc., the WestTrop community association, and WestTrop's agent, Nevada Association Services. The claims break down into two groups. The first three assert the validity of Bank of America's deed of trust despite WestTrop's foreclosure. Those claims are: (1) declaratory relief against T-Shack under the federal foreclosure bar; (2) quiet title against T-Shack under the federal foreclosure bar; and (3) general quiet title against every defendant. The second, and seemingly alternative, group of claims challenge the association's application of NRS § 116 and seek injunctive relief. Those claims are: (4) breach of NRS § 116.1113 against WestTrop and Nevada Association Services; (5) wrongful foreclosure against WestTrop and Nevada Association Services; and (6) injunctive relief against T-Shack. Am. Compl. 9–16, ECF No. 43. This motion seeks summary judgment on bank's first three claims. Those claims boil down to the same question: did Bank of America protect its deed of trust before WestTrop foreclosed? The banks remaining claims are pleaded in the alternative or are actually remedies[2] disguised as a standalone cause of action.

#### A. Request for Judicial Notice

At the outset, Bank of America asks the Court to take judicial notice of two groups of publicly available documents and one fact related to the FHFA's conservatorship over Fannie Mae and Freddie Mac. The Court may take judicial notice of any fact that is "generally known" or that is easily verifiable by reputable sources. Fed. R. Evid. 201(b). The documents and facts that Bank of America submits meet that requirement. The first group of documents consists of recorded instruments that detail the acquisition and assignment history of the property at issue in this case. They qualify for judicial notice because they are public records that are available through the Clark County Recorders Office, a reputable source. Lee v. City of Los Angeles, 250

---

[2] The Court dismisses Bank of America's sixth claim for injunctive relief because an injunction is a remedy and not a standalone cause of action. See In re Wal-Mart Wage and Hour Emp't Practices Litig., 490 F.Supp. 2d 1091, 1130 (D. Nev. 2007). As for the bank's breach of NRS § 116.3116 and wrongful foreclosure causes of action, the Court finds that Bank of America prevailing on its quiet title claims necessarily moots those claims. See BNY Mellon v. Mews Homeowners Ass'n, No. 2:17-cv-0473-KJD-BNW, 2019 WL 4261853 at *6 (D. Nev. Sept. 9, 2019) (dismissing bank's wrongful foreclosure and breach of NRS § 116 claims as moot because the bank's deed of trust survived the foreclosure sale).

F.3d 668, 689 (9th Cir. 2001). The next document is the FHFA's statement that it does not consent to state foreclosures. Like the recorded instruments, this is a public document that is available for review on a government website. Even though the parties dispute whether the FHFA consented in this case (see D.'s Resp. 15, ECF No. 65), judicial notice is appropriate as there is no dispute that the document itself is reliable. See Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998–99 (9th Cir. 2010). Finally, Bank of America asks the Court to take judicial notice that the FHFA placed Freddie Mac under conservatorship in 2008 and that the enterprise remains under FHFA control. Again, this fact is easily verifiable through federally maintained webpages. See Why Fannie Mae and Freddie Mac are in Conservatorship, https://www.fhfa.gov/Conservatorship (last visited March 6, 2020). Accordingly, the Court takes judicial notice of the public documents and facts that Bank of America requests.

### B. The Federal Foreclosure Bar Protected Freddie Mac's Interest

Next, the Court moves to the issues that are dispositive to Bank of America's motion: the Federal Foreclosure Bar and the bank's tender. Bank of America first argues that WestTrop's foreclosure could not extinguish the existing deed of trust because the Federal Foreclosure Bar preempted NRS § 116. The law surrounding the Federal Foreclosure Bar is settled in this circuit. The Housing and Economic Recovery Act of 2008 explicitly protects Freddie Mac and Fannie Mae properties from "levy, attachment, garnishment, *foreclosure, or sale*" without FHFA consent. 12 U.S.C. § 4617(j)(3). Both the Ninth Circuit and Nevada Supreme Courts have recognized that § 4617(j)(3) indeed insulates Freddie Mac and Fannie Mae against otherwise valid NRS § 116 foreclosures. See Berezovsky v. Moniz, 869 F.3d 923, 933 (9th Cir. 2017); Saticoy Bay, LLC v. Fed. Nat'l Mortg. Ass'n, 417 P.3d 363, 273 (Nev. 2018). In effect, as long as Freddie Mac or Fannie Mae own an interest in the disputed property and are subject to the FHFA's conservatorship, their liens cannot be foreclosed absent the FHFA's consent.

Fannie Mae and Freddie Mac need not be listed as beneficiary under the deed of trust to receive protection under the foreclosure bar. Daisy Tr. v. Wells Fargo Bank, N.A., 445 P.3d 846. 849 (Nev. 2019). Nevada's recording statute at the time Freddie Mac acquired its interest here did not require that the assignment be recorded. Instead, the assigning party could record the

1    assignment if it chose. Id. (citing NRS § 106.210 (2006) ("any assignment of the beneficial

2    interest under a deed of trust *may be recorded*") (emphasis added)). Because recording the

3    assignment was optional, Fannie and Freddie's absence from the deed of trust does not doom

4    their claim. Their loan servicers—who generally are listed on the deed of trust—may assert the

5    enterprises' interests. Similarly, Fannie and Freddie need not produce their original promissory

6    note or loan agreement to prove their interest. Id. at 850. Both the Ninth Circuit and Nevada

7    Supreme Court have recognized that Freddie Mac and Fannie Mae's internal records coupled

8    with an employee declaration is enough to prove that the enterprise took an interest in the

9    disputed property. Berezovsky, 869 F.3d at 932 n.8; Daisy Tr., 445 P.3d at 851.

10        T-Shack does not dispute that the Federal Foreclosure Bar generally preempts state-law

11   foreclosures. Instead, it advances a handful of arguments to say that the bar does not apply in this

12   case. Some of these arguments have been expressly rejected by the Ninth Circuit, and the others

13   are not persuasive.

14        First, T-Shack argues that MERS transferred away Freddie Mac's interest in this property

15   when it assigned "all of its interest" to Bank of America in February of 2011. D.'s Resp. at 6. If

16   so, T-Shack claims, Freddie Mac had no interest in the property at WestTrop's foreclosure and

17   therefore cannot assert the federal foreclosure bar. However, MERS never owned enough of an

18   interest in the property to transfer away all of Freddie Mac's rights. The deed of trust defines

19   MERS "solely as a nominee for Lender and Lender's successors and assigns." Deed of Trust 2,

20   ECF No. 62-C. MERS was merely an electronic tracking system for lenders to monitor their

21   contracted loan servicers. See About MERSCORP Holdings, Inc., supra note 1. This is evident

22   from the deed of trust, which conveyed to Bank of America only the "beneficial interest" under

23   the original deed of trust. In short, MERS never had authority to convey Freddie Mac's entire

24   interest in the property to a third party. Therefore, MERS could not transfer Freddie Mac's

25   interest in this property when it conveyed servicing rights to Bank of America.

26        Next, T-Shack argues that Bank of America has not adequately demonstrated Freddie

27   Mac's interest because Freddie Mac did not record the conveyance. D.'s Resp. at 7. The Nevada

28   Supreme Court explicitly rejected this argument in Daisy Trust. See 445 P.3d at 851.

Nevertheless, T-Shack claims that Freddie Mac was required to record its property interest because "Nevada law has required public recording of [conveyances] since 1861." D.'s Resp. at 7. T-Shack does not attempt to distinguish this case from the myriad others that are factually similar. In fact, T-Shack does not even cite Daisy Trust despite its explicit holding that Freddie Mac was not required to record its interest under Nevada law. This is not the forum to relitigate Daisy Trust as this Court is bound by that decision as far as it interprets state law. Ticknor v. Choice Hotels Intern., Inc., 265 F.3d 931, 939 (9th Cir. 2001). Regardless, the business records and declarations that Bank of America submitted are sufficient evidence of Freddie Mac's property interest. Its failure to record does not create a genuine issue of fact as to Freddie Mac's ownership interest.

T-Shack next argues that Bank of America's reliance on the Federal Foreclosure Bar fails as a matter of law because only Bank of America had a property interest at the time of foreclosure. T-Shack contends that Bank of America cannot invoke the foreclosure bar "to defeat inconvenient state law doctrines." D.'s Resp. at 12–13. For support, T-Shack points to O'Melveny & Myers v. F.D.I.C., 512 U.S. 79 (1994). There, The F.D.I.C. sued O'Melveny & Myers for malpractice arising out of the law firm's representation of a savings and loan under F.D.I.C. conservatorship. Id. at 82. The particular question was whether federal or state common law controlled the imputation of knowledge of fraud between the savings and loan's directors and the savings and loan as a whole. Id. at 84. Answering the question, the Supreme Court reinforced the principle that there is no federal common law. Id. at 83–84. It further found that the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA") did not create a "concrete federal policy or interest that is compromised by California law." Id. at 88. As a result, FIRREA did not subvert California's common law on the imputation of knowledge of fraud.

O'Melveny is distinguishable. While both cases touch on the issue of federal law supremacy, this case differs from O'Melveny because application of Nevada's foreclosure law would "stand as an obstacle to the accomplishment and execution of the full purposes" of the Housing and Economic Recovery Act. Berezovsky, 869 F.3d at 931 (internal quotations omitted). Further, Bank of America does not dispute the well settled principle that there is no

federal common law. The bank even agrees that state law would govern the foreclosure action if that law was not preempted under Berezovsky. The difference is that HERA provides the statutory basis to apply federal law that was missing in O'Melveny. Therefore, O'Melveny does not stop the Court from applying § 4617(j)(3)'s foreclosure bar.

T-Shack also cites Reconstr. Fin. Corp. v. Beaver Cty for the proposition that only state law can define "property interest." 328 U.S. 204 (1946). Beaver County asked whether certain property belonging to the Reconstruction Finance Corp. was real or personal property. If classified as real property under state law, the state could collect taxes on the property. The state's definition of real property was broader than its federal counterpart and would thus impose a larger tax burden on the entity. See id. at 208. The Supreme Court concluded that the state's tax law was binding on the Court unless it conflicts with the federal statute. Id. The tax law did not conflict with the federal statute, however, because the federal statute did not define real property. Id. Absent a conflicting federal definition, plainly defined state law controlled. Id. at 210. In essence, Beaver County recognized that state law controls as long as it does not "patently run counter" to the terms of a federal statute. Id. The Court has already determined that NRS § 116.3116 must give way to HERA because the two statutes impliedly conflict. Berezovsky, 869 F.3d at 931. Therefore, Beaver County does not sway the Court.

Neither O'Melveny nor Beaver County invalidate the Federal Foreclosure Bar here. Both cases are distinguishable. But more importantly, neither case faced a state statute like NRS § 116 that would explicitly interfere with the purposes of the disputed federal statute. Therefore, Bank of America's reliance on the Federal Foreclosure Bar does not fail as a matter of law as T-Shack argues.

Next, T-Shack argues that there is a genuine issue of fact whether the FHFA consented to WestTrop's foreclosure. Tellingly, T-Shack does not argue—or present evidence—that the FHFA consented to foreclosure in this case. Rather, T-Shack claims that Bank of America has not produced evidence that FHFA *did not* consent. It is difficult and unfair to require a party to prove a negative fact. See United States v. Corte-Rivera, 454 F.3d 1038, 1041–42 (9th Cir. 2006). Further, requiring Bank of America to prove that FHFA did not consent to this

foreclosure would impermissibly shift the burden of production at summary judgment. Summary judgment first requires the moving party to produce evidence that removes a genuine issue of fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Once that happens, the burden shifts to the nonmoving party to produce its own evidence demonstrating the existence of a disputed fact. Id. If the nonmoving party cannot create more than some "metaphysical doubt" concerning an issue of fact, it has not carried its burden. Id. at 586.

T-Shack has not met its burden to demonstrate a disputed fact over FHFA's consent. Meanwhile, Bank of America has produced the FHFA's statement on foreclosures, like this one, that involve a state-created superpriority lien. See FHFA Stmt., ECF No. 62-J. That statement confirms that FHFA "has not consented, and will not consent in the future, to the foreclosure or other extinguishment of any Fannie Mae or Freddie Mac lien or other property interest in connection with HOA foreclosures of super-priority liens." Id. at 2. That statement is in line with the FHFA's main purpose to protect the assets over which it is conservator. Surely there would be a record of FHFA's consent had T-Shack or WestTrop received it. There is no evidence to support that consent. Therefore, T-Shack has not carried its burden to demonstrate a genuine issue of fact surrounding FHFA's consent to this foreclosure.

Finally, T-Shack argues that the Federal Foreclosure Bar cannot preempt NRS § 116.3116 because it is unconstitutional. The gist of T-Shack's argument is that § 4617(j)(3) violates due process because it does not create a method for adverse parties to request consent to foreclosure from the FHFA. D.'s Resp. at 17. However, a due process violation necessarily entails the government's infringement on a constitutionally protected interest. Guatay Christian Fellowship v. Cty. of San Diego, 670 F.3d 957, 983 (9th Cir. 2011) (plaintiff must first establish "a liberty or property interest protected by the Constitution"). T-Shack has not explicitly identified what that protected interest is. The Court assumes that the interest is a free-and-clear title to the Tropicana property. However, T-Shack never owned that interest in the first place because the foreclosure bar preserved Freddie Mac's deed of trust. Thus § 4617(j)(3) could not deprive T-Shack of an interest it never had.

Even if there was a constitutionally protected interest at stake here, T-Shack, as the buyer, would not be the deprived party. The Federal Foreclosure Bar only affects parties seeking to levy, foreclose upon, or sell a property without the FHFA's consent. 12 U.S.C. § 4617(j)(3). Because buyers at a foreclosure auction are not seeking to do any of those things, § 4617(j)(3) does not deprive them of any rights. Such a deprivation "would implicate the potential seller, or the foreclosing HOA, *and not the buyer*." Fed. Home Loan Mortg. Corp. v. SFR Invs. Pool 1, LLC, 896 F.3d 1136. 1150 (9th Cir. 2018) (emphasis added). Therefore, the lack of a convenient mechanism to seek FHFA consent to a foreclosure does not violate procedural due process. Id. at 1150–51.

In sum, 12 U.S.C. § 4617(j)(3) barred WestTrop's foreclosure inasmuch as it attempted to extinguish Freddie Mac's interest in 5155 W. Tropicana Avenue, unit 2050, in Las Vegas, Nevada. Bank of America, as Freddie Mac's servicer, provided admissible and reliable evidence that Freddie Mac indeed acquired an interest in the property in 2007 and held that interest when WestTrop attempted to foreclose. Because Freddie Mac was under FHFA conservatorship at the time, its assets were entitled to federal protection against state law foreclosures unless FHFA consented, which it did not do. As a result, WestTrop could not extinguish Freddie Mac's interest, and that interest continues to encumber this property.

### C. Alternatively, Bank of America Cured WestTrop's Superpriority Lien by Tender

The Nevada Supreme Court is clear that valid tender of the superpriority lien before foreclosure voids the foreclosure as to the lender's deed of trust. Bank of America, N.A. v. SFR Invs. Pool 1, LLC, 427 P.3d 113, 121 (Nev. 2018) ("Diamond Spur"). Tender is "valid" if it is payment in full and unconditional, or with conditions that the tendering party has a right to request. Id. at 117–118. Diamond Spur presented facts nearly identical to these. There, the foreclosing association's agent refused to provide a nine-month ledger that would identify the outstanding superpriority balance. That forced the bank to calculate nine-months' assessments and send the association's agent a check for that amount. The letter accompanying the tender included certain conditions, including a "paid-in-full" condition, whereby the association's acceptance of tender would satisfy all of the bank's financial obligations to the association. Id. at

118. Like here, the association rejected the check and foreclosed. The association argued that the bank's tender was incomplete because it did not include payment for nuisance and abatement fees and that the tender was impermissibly conditional due to the paid-in-full language in the tender letter. Id. at 117–18.

The Nevada Supreme Court disagreed. It found that the bank's tender was both "in-full" and not impermissibly conditional. Payment in full, according to NRS § 116.3115, includes nine months of unpaid assessments and nuisance and abatement fees, if such fees exist. Id. at 117. Because there was no evidence that Bank of America owed nuisance and abatement fees, its tender of nine months' unpaid assessments constituted payment in full. Id. Likewise the tender was not impermissibly conditional because Bank of America had a right to insist upon the conditions it included in its tender. By tendering payment before foreclosure, the bank voided the association's foreclosure of the superpriority lien. The association, therefore, could not convey the property free from Bank of America's deed of trust, and any subsequent purchaser took its interest subject to the bank's. Id. at 121.

The facts here are nearly identical to Diamond Spur. Miles Bauer calculated the superpriority lien amount and sent a check to cure WestTrop's lien, yet the association rejected the check and foreclosed anyway. Bank of America's check was limited to nine-months of assessments and did not include any of the additional fees and charges that WestTrop added to the balance over the foreclosure process. T-Shack argues that Bank of America's tender is invalid because it purported to be "payment in full" but did not pay the entire balance. D.'s Resp. at 18. However, the superpriority lien consisted only of nine-months of assessments and any nuisance or abatement fees. Id. at 118 ("the superpriority portion of an HOA lien includes only charges for maintenance and nuisance abatement, and nine months of unpaid assessments"). Bank of America owed no more than nine-months of assessments to preserve its lien.[3] Bank of America's tender cured the superpriority lien and therefore voided WestTrop's foreclosure as to its deed of trust.

---

[3] T-Shack has not produced any evidence that WestTrop incurred maintenance or nuisance and abatement fees here. Therefore, the outstanding superpriority lien balance was limited to nine-months of assessments.

**IV. Conclusion**

Accordingly, IT IS HEREBY ORDERED that Bank of America's Partial Motion for Summary Judgment is **GRANTED**. The Court declares that Bank of America's deed of trust in the property located at 5155 W. Tropicana Avenue, unit 2050, in Las Vegas, Nevada survived WestTrop Association's nonjudicial foreclosure. Any interest that T-Shack took in that property it took subject to Bank of America's valid deed of trust.

IT IS FURTHER ORDERED that Bank of America's alternative claims for breach of NRS § 116.3116, wrongful foreclosure, and injunctive relief are **dismissed as moot**.

The Clerk of Court is directed to **ENTER JUDGMENT** in favor of plaintiff Bank of America and against defendant T-Shack, Inc.

Dated this 9th day of March, 2020.

_____
Kent J. Dawson
United States District Judge